**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ollie Lee Lee,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>    Defendant. | No. CIV 13-768-TUC-JAS (LAB)<br><br>**REPORT AND RECOMMENDATION** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g).

The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

The court finds the final decision of the Commissioner is supported by substantial evidence and free from legal error. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

PROCEDURAL HISTORY

Lee constructively filed her application for disability insurance benefits and supplemental security income on July 16, 2010. (Tr. 193) She alleged disability beginning on December 19, 2009, due to asthma, depression, and back pain. (Tr. 216) Her claim was denied initially (Tr. 106-113) and upon reconsideration (Tr. 117-123). Lee requested review and appeared with

counsel at a hearing before Administrative Law Judge (ALJ) Peter J. Baum on April 25, 2012. (Tr. 32) In his decision, dated June 14, 2012, the ALJ found Lee was not disabled because she could perform past relevant work in customer service. (Tr. 17-23)

Lee appealed and submitted additional exhibits, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 5-11); *see Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989). Lee subsequently filed this action appealing the Commissioner's final decision. (Doc. 1); *see* 20 C.F.R. § 422.210(a). She argues the ALJ erred by finding she had no severe mental impairments and erred in his evaluation of her residual functional capacity. (Doc. 23) The Commissioner filed a response on April 24, 2014. (Doc. 26) Lee did not file a reply. The court finds to the contrary that the ALJ's decision was supported by substantial evidence.

<u>Claimant's Work History and Medical History</u>

Lee was born in April of 1963. (Tr. 35) She has a GED and some college credit. (Tr. 35) She worked for a phone company in customer service and worked as a bartender. (Tr. 217) She testified she was "laid off" from her job as a bartender because her back problems prevented her from doing the lifting the job required. (Tr. 35)

<u>Mental Impairments</u>

In June of 2011, Lee was evaluated by Noelle Rohen, Ph.D., for the state disability determination service. (Tr. 425-429) Rohen diagnosed "Depressive Disorder NOS, Chronic." (Tr. 427) She stated, "Ms. Lee . . . notes mild to moderate chronic depression in the context of a life full of loss of loved ones under violent circumstances, including son." *Id*. "Psychiatric conditions are expected to be chronic with guarded prognosis, though it is not clear that they impact her ability to work . . . ." *Id*. Rohen completed a Psychological/Psychiatric Medical Source Statement in which she stated Lee's condition will not impose any limitations lasting 12 months. (Tr. 428)

1  Lee was evaluated by Yanina Shames, PMHNP (Psychiatric-Mental Health Nurse
2  Practitioner), in January of 2012. (Tr. 493) Shames diagnosed schizoaffective disorder,
3  posttraumatic stress disorder, and panic disorder without agoraphobia. (Tr. 497) Shames
4  assessed a GAF (Global Assessment of Functioning score) of 50 indicating "serious symptoms"
5  or "any serious impairment in social, occupational, or school functioning." (Tr. 497);
6  *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM–IV) 31–34 (4th ed.2000).

Physical Impairments

In February of 2010, Lee established care with Eun Min Lee, M.D. (Tr. 313) She complained of asthma, back pain, and leg numbness. *Id*. Her physician assessed backache and lumbar radiculopathy. *Id*.

Lee was referred by her treating physician to Robert A. Foote, M.D., for MRI studies in July of 2010. (Tr. 317-320) Foote's impression was degenerative anterolisthesis of L4 on L5 and severe spinal stenosis. (Tr. 320)

In December of 2010, Lee established care with Sadaf A. Saleem, M.D. (Tr. 366) Saleem assessed chronic back pain, spinal stenosis, lumbar degenerative joint disease, and asthma (stable). (Tr. 366) Saleem prescribed Percocet for pain. *Id*.

Also in December of 2010, Marilyn Orenstein, M.D., reviewed the record and completed a Physical Residual Functional Capacity Assessment for the state disability determination service. (Doc. 70-73) She concluded Lee could lift and/or carry less than 10 pounds frequently and 20 pounds occasionally.[1] *Id*., p. 71. She could stand and/or walk with normal breaks for at least 6 hours in an 8-hour day. *Id*. She could sit with normal breaks for about 6 hours in an 8-hour day. *Id*. She should never climb ladders, ropes, or scaffolds. *Id*. She should only occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. *Id*. She should avoid

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR §§ 404.1567, 416.967.

concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. *Id.*

In May of 2011, physician Nathan Strause, reviewed the record and completed a Physical Residual Functional Capacity Assessment for the state disability determination service. (Doc. 98-104) He concluded Lee could lift and/or carry less than 10 pounds frequently and 20 pounds occasionally. *Id.*, p. 99. She could stand and/or walk with normal breaks for at least 6 hours in an 8-hour day. *Id.* She could sit with normal breaks for about 6 hours in an 8-hour day. *Id.* She should never climb ladders, ropes, or scaffolds. *Id.* She should only occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. *Id.* She should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. *Id.*

In July of 2011, Lee underwent surgery to fuse her lumbar vertebra. (Tr. 463-468) Kurt A. Schroeder, M.D., reported the surgery went "very, very well" and opined she was now "absolutely neurologically normal." (Tr. 463-464) Schroder further noted that after the procedure, Lee was very anxious and agitated for unknown reasons. (Tr. 463) She was referred for a psychiatric evaluation. (Tr. 463)

<u>Hearing Testimony</u>

On April 25, 2012, Lee appeared with counsel at a hearing before ALJ Peter J. Baum. (Tr. 32) Lee was 49 years old at the time of the hearing. (Tr. 35) She has a GED and some college credits. (Tr. 35)

Lee testified that she stopped work as a bartender in December of 2009 because of her back problems. (Tr. 35) She said she subsequently looked for other work such as telemarketing. (Tr. 35) She then opined she could not do that type of job now because she has carpal tunnel, and it is hard for her to lift her arms sometimes. (Tr. 35)

Lee testified that after her back surgery she straightened up, but she still is unable to walk a block without stopping and resting. (Tr. 38) She denied leaving the hospital against medical advice after her surgery. (Tr. 39) She acknowledged her doctors told her smoking would reduce the chances of a successful fusion and stated she was "cutting down." (Tr. 41)

She currently takes Zoloft, Oxycodone, and anxiety pills. (Tr. 49)

The ALJ noted certain inconsistencies between Lee's testimony and the record prompting him to state, "[a]t this point, counselor, I am not sure that Ms. Lee is a reliable witness." (Tr. 43)

### CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[2] to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

The ALJ's Findings

At step one of the disability analysis, the ALJ found Lee "has not engaged in substantial gainful activity since December 19, 2009, the alleged onset date . . . ." (Tr. 19). At step two, he found Lee "has the following severe impairments: degenerative disc disease of the lumbar and cervical spines; marijuana abuse; and asthma . . . ." (Tr. 19) At step three, the ALJ found Lee's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 20)

The ALJ then analyzed Lee's residual functional capacity (RFC). He found that from her alleged onset date to April 1, 2011, she "has the residual functional capacity to perform light work . . . except she must avoid concentrated exposure to hazards . . . and fumes, odors, dusts, gases, poor ventilation, etc." (Tr. 20) After that date, she "has the residual functional capacity to perform sedentary work . . . except she must avoid concentrated exposure to hazards . . . and fumes, odors, dusts, gases, poor ventilation, etc." (Tr. 20)

At step four, the ALJ found Lee was able to perform her past relevant work in customer service. (Tr. 22) Accordingly, he found Lee was not disabled "from December 19, 2009, through the date of this decision. . . ." (Tr. 22)

---

[2] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted).

DISCUSSION

Lee argues first that the ALJ failed to properly evaluate her mental impairment at step 2 of the disability analysis. Specifically, she argues the ALJ failed to comply with the procedural requirements of 20 C.F.R. § 404.1520a, which instructs the ALJ to complete a Psychiatric Review Technique Form (PRTF) or incorporate its analysis in his decision. (Doc.

21, p. 5); *see, e.g.,* (Tr. 60)  The PRTF is designed to regularize the ALJ's analysis of mental impairments by instructing the ALJ to consider "four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  20 CFR § 404.1520a(c)(3).

In this case, the ALJ adopted the report of the examining psychologist Noelle Rohen, Ph.D., and concluded that Lee's episodic depression did not comply with the duration requirement that her impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."  (Tr. 20); 20 C.F.R. § 404.1509; § 404.1520(a)(4)(ii).  The ALJ did not, however, complete the Psychiatric Review Technique Form or specifically incorporate its methodology in this decision as required by the Rule governing mental impairment analysis. 20 C.F.R. § 404.1520a.

In the Ninth Circuit, failure to comply with this procedural rule ordinarily results in remand.  *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011).  Here, however, substantial evidence supported the ALJ's finding that Lee's mental impairment did not fulfill the 12-month durational requirement.  Accordingly, his failure to comply with this procedural rule was harmless  *See, e.g., Dixon v. Astrue*, 2010 WL 4942141, 10 (N.D.Fla. 2010) ("[T]he ALJ's failure to apply the special technique in this case is harmless" because "the records do not establish that Plaintiff's anxiety existed for a continuous, twelve-month period."); *see also Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir. 2000) ("[F]ailure to fill out the PRTF [Psychiatric Review Technique Form] does not require reversal in situations where there is no viable claim of mental impairment."), *superseded by regulation as stated in Blackmon v. Astrue*, 719 F.Supp.2d 80, 92 (D.D.C. 2010).

Lee further argues that the ALJ substantively erred by finding she does not have a severe mental impairment.  She concedes that the examining psychologist, Noelle Rohen, might have been correct about her mental condition at the time of the examination, but she argues her condition deteriorated after her back surgery.  She states she sought mental health treatment from CODAC in November of 2011 and January of 2012 complaining of  insomnia, mood

swings, panic attacks, and lack of motivation. (Doc. 21, p. 10) She notes she received a GAF score of 50 in February of 2012 from Yanina Shames, PMHNP.

In his decision, the ALJ acknowledged that Lee sought treatment from CODAC and that she received a GAF score of 50 in February of 2012. (Tr. 20) He chose, however, to discount that evaluation and adopt the contrary opinion of the examining psychologist, Noelle Rohen. *Id*. He did so for two reasons: first, the GAF score of 50 was not given by a physician or psychologist and second, the GAF score by itself did not indicate whether Lee's mental condition would last long enough to satisfy the 12-month durational requirement. *Id*. These are adequate reasons for rejecting Shames's opinion in favor of the report from the examining psychologist, Rohen. *See* 20 C.F.R. § 404.1513 (A nurse-practitioner is not an "acceptable medical source" as is a physician or psychologist.); 20 C.F.R. § 404.1509; § 404.1520(a)(4)(ii). Accordingly, the ALJ's analysis of Lee's mental impairment is supported by substantial evidence.

Lee further argues the ALJ's evaluation of her physical impairments was error. First, she argues the ALJ erred when he failed to evaluate her postural limitations.

The non-examining experts, Orenstein and Strause, opined that Lee could perform light work. (Tr. 70-73); (Tr. 98-104) They also opined that Lee should "never climb ladders, ropes, or scaffolds" and "should only occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl." *Id*. The ALJ adopted the experts' exertional limitations but did not discuss or adopt their postural limitations.

Assuming without deciding that the ALJ erred here, the court finds his error harmless. *See Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (An ALJ's error is harmless if it "was inconsequential to the ultimate nondisability determination."). The ALJ found that Lee could return to her past relevant work in customer service. This job, as Lee described it, did not require kneeling, crouching, crawling, or stooping. (Tr. 226) Accordingly, even if Lee had the postural limitations described by Orenstein and Strause, she was not prevented from performing her past relevant work in customer service. S*ee, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[T]o the extent the ALJ's

RFC finding erroneously omitted Stubbs–Danielson's postural limitations . . . any error was harmless since sedentary jobs require infrequent stooping, balancing, crouching, or climbing.").

Lee also argues the ALJ erred by failing to properly evaluate her carpal tunnel impairment. The non-examining physicians, however, found that Lee has no manipulative limitations. (Tr. 72); (Tr. 99) And while the medical record supports a diagnosis of mild carpal tunnel syndrome, Lee does not point to anything in the record that explains how this condition affects her ability to work. (Tr. 407, 515, 614, 615) In the absence of any contrary medical opinion, the ALJ was entitled to rely on the opinion of the non-examining physicians. *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (The "opinion of a non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record.").

Moreover, the court finds that if the ALJ erred, the error was harmless. Lee stated her past relevant work in customer service did not require handling, grabbing, or grasping big objects or writing, typing, or handling small objects. (Tr. 226) According, it does not appear her mild carpal tunnel syndrome would prevent her from performing her past relevant work in customer service. At the hearing, Lee stated that she has carpal tunnel in both of her hands and "it's hard to, you know, even lift my arms sometimes." (Tr. 36) She does not, however, point to anything in the medical record supporting this type of limitation.

Finally, Lee argues the ALJ failed to incorporate into his RFC her need to change positions frequently. In support of this functional limitation she cites generally to medical reports of continued back pain after her surgery. (Doc. 21, pp. 19-20) The non-examining physicians, however, did not opine that her condition results in this type of functional limitation. And Lee does not direct the court to a medical source who discusses this alleged need of hers. Finally, Lee does not explain why this specific limitation, assuming it exists, would preclude her from performing her past relevant work. Accordingly, the court finds the ALJ's evaluation of Lee's RFC was not error for failing to include this requirement.

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, enter an order affirming the decision of the Commissioner and denying benefits. (Doc. 23).

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 14 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. The Local Rules permit the filing of a response to an objection. They do not permit the filing of a reply to a response.

DATED this 24th day of September, 2014.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge